NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------
VANESSA PETERS                          :
                                        :
            Plaintiff,                  :      Civ. No. 05-4696 (DRD)
      v.                                :
                                        :
                                        :
COMMISSIONER OF SOCIAL                  :      **O P I N I O N**
SECURITY,                               :
                                        :
            Defendant.                  :
------------------------------------------------------

Appearances by:

Gabriel J. Hermann
Insler & Hermann LLP
One University Plaza Drive, Suite 8
Hackensack, NJ 07601
      Attorney for Plaintiff

Karen G. Fiszer
Office of the US Attorney
26 Federal Plaza, Room 3904
New York, NY 10278-0004
      Attorney for Defendant

**DEBEVOISE, Senior District Judge**

Plaintiff, Vanessa Peters ("Plaintiff"), appeals from a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under the Social Security Act ( the Act"). Plaintiff contends that the

Administrative Law Judge's decision to deny her application for DIB contains error of law and was not supported by substantial evidence. Plaintiff, to the contrary, alleges that substantial evidence exists that Plaintiff has been continually disabled since December 7, 2002.

## PROCEDURAL HISTORY

On January 29, 2003, Plaintiff filed an application for DIB alleging disability as of December 7, 2002. Plaintiff's application was denied initially (R. at 23) and again upon reconsideration. (R. at 32). Plaintiff then requested a judicial hearing to review the application, which was held before Administrative Law Judge Katherine Edgell (the "ALJ") on September 1, 2004. (R. at 439). The ALJ denied Plaintiff's application on December 22, 2004, finding that she did not suffer from a disability as defined in the Social Security Act. (R. at 13-18). Plaintiff then submitted a request for review of the ALJ decision by the Appeals Council. (R. at 9.) This request was denied on July 28, 2005. (R. at 5-8). Plaintiff filed the Complaint that is the subject of this Opinion on September 28, 2005.

## BACKGROUND

### A. Plaintiff's Personal Background

Plaintiff is 46 years old, married, and a resident of New Jersey. She has congenital hearing deficits, but she does not wear a hearing aid. In July 2002, Plaintiff contends that she began to suffer from symptoms of fibromyalgia, and, in October 2002, sought permission to cut back on her work hours. She resigned from her last place of employment on December 7, 2002, when she claims that fatigue and pain, left her unable to continue working. She did not receive unemployment benefits. She applied for DIB on January 29, 2003.

Plaintiff asserts that her current functional capacity allows her only to lift and carry items

weighing up to five pounds for short distances, button clothes with difficulty, and hold a pen or pencil for about ten minutes. She claims that she cannot stay seated for more than 30 minutes, stand for more than fifteen minutes at a time, or walk more than a block before having to sit down. According to Plaintiff, around the home, she performs light housekeeping tasks, such as making the bed, caring for her cat, and doing the laundry, and she reads and watches television regularly. She testified that she is also able to drive to a nearby nursing home to visit her mother, which she does on a weekly basis.

### B. Plaintiff's Work History

Plaintiff completed two years of college and earned qualifications as an x-ray technician. Between 1987 and 1995, she was employed in that capacity by several medical offices and also performed front office duties. At one office, she also served as a medical assistant, which required her to draw blood, take blood pressure, and prepare patients for consultation with the doctor. From 1996 until she ceased working in December 2002, Plaintiff worked for another medical practice as a front office receptionist and supervisor.

According to Plaintiff, her work as an x-ray technician involved taking x-rays, filing the x-ray films, helping patients on and off the table, and carrying x-ray cassettes, which weighed up to eight pounds. At her most recent position, a supervisory role in which she oversaw five other employees, her duties included delegating and monitoring the work of her subordinates, data entry, scheduling patient appointments and other telephone work, greeting patients and updating their charts  The job required her to be seated for approximately two-thirds of the day, and standing for the remainder.

*C. Plaintiff's Medical History*

Plaintiff has suffered from hearing deficiencies for most of her life. She visited an ear, nose, and throat specialist in July 2003, who pronounced her a candidate for a hearing aid, although she currently does not wear one. She is mildly asthmatic and has a heart defect. She testified that in July 2002 she began experiencing her current symptoms of chronic muscle pain and fatigue. In her application for social security disability, she describes how the pain spread throughout her body, with a commensurate increase in her level of fatigue, until she was forced to resign from her job at the end of 2002.

In January 2003, Plaintiff was referred by her internist to Dr. Ralph Marcus, a rheumatologist, after tests showed she had a positive ANA, a possible indicator of lupus or other immune deficiency diseases. Dr. Marcus's initial conclusion was that Plaintiff "appears to have fybromyalgia despite the low number of classic tender points,"[1] but that it was unlikely she had lupus, due to the lack of symptoms and a failure to respond to a course of Prednisone. He also diagnosed rotator-cuff tendonitis.

Dr. Marcus continued to monitor Plaintiff's condition through August 2003 and prescribed her various medications. During this period, Plaintiff reported some improvement at first, followed by increasing pain and fatigue. After his final examination of Plaintiff on August 8, 2003, Dr. Marcus found that "the patient has full range of motion of the joints without pain."

Plaintiff consulted with another rheumatologist, Dr. Edward Ewald, in September 2003.

---

[1] Studies of patients with fibromyalgia have identified eighteen specified potential "tender points" across the body. The presence of at least eleven of these in a patient is a strong diagnostic criterion for the disorder. Although Plaintiff exhibited only five tender points (R. at 156), "a person does not need to have ... 11 tender points to be diagnosed and treated" for fibromyalgia. See www.fmetnews.com/pages/criteria.html.

He reported that Plaintiff's history was consistent with a diagnosis of fibromyalgia, although his examination revealed no evidence of tender points.

Due to a change in her insurance coverage, Plaintiff visited a third rheumatologist, Dr. Christine Cholhan, in May 2004. Dr. Cholhan noted Plaintiff is overweight at 224 pounds, her weight having increased from 196 pounds in January 2003. She concurred that "fybromyalgia is very likely" given the patient's history. She, too, noted that Plaintiff had "full range of motion of all the large joints."

In May 2003, after complaining of numbness, pain, and tingling in her wrists, hands, and fingers, Plaintiff was referred to a neurologist, Dr. Anthony Marquinez, who determined that she had biltareal median nerve entrapment in her wrists and was at risk of developing carpal tunnel syndrome. She subsequently underwent surgery to effect carpal tunnel release in her left wrist in October 2003. Her surgeon, Dr. Jonathan Archer, reported in a follow-up examination that her wrist was "much better."

In August 2003, Plaintiff underwent an MRI examination of her right knee. She was found to have small degenerative tear in her meniscus and a sprained medial ligament, which is suggestive of mild to moderate osteoarthritis.

Dr. Donald Moorehead performed a psychiatric evaluation of Plaintiff in October 2003, wherein he diagnosed an "adjustment disorder with mixed anxiety and depressed mode," and concluded that she did not present with any "cognitive deficits or intellectual limitations that would impair her ability to function on the job."

A Social Security Administration physician, Dr. A. M. Pirone, reviewed Plaintiff's medical record in August 2003. He determined that the Plaintiff was capable of sitting, standing,

5

or walking for six hours in an eight-hour work day, lifting twenty pounds occasionally and ten pounds frequently.

### *DETERMINATION OF DISABILITY AND BURDENS OF PROOF*

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The individual's physical or mental impairments must be of such severity that he is not only unable to do his previous work but also cannot, considering age, education and work experience, engage in any other kind of substantial gainful employment. 42 U.S.C. § 423(d)(2)(A).

The plaintiff bears the burden of proving that she is unable to return to her former occupation. Dempsey v. Comm'r of Soc. Sec., 59 Fed. Appx. 496, 497 (3d. Cir. 2003). Once the plaintiff has satisfied this initial burden, "the burden of proof shifts to the Secretary to show that the claimant, given her age, education, and work experience, has the capacity to perform specific jobs that exist in the national economy." Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).

The Commissioner of Health and Human Services has promulgated a five-step analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520. The adjudicator first considers whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is working and the work involves substantially gainful activity, her application for disability benefits is automatically denied. See 20 C.F.R. § 404.1520(b). If not, step two of the analysis requires determining whether the claimant has a severe impairment,

namely, any impairment or combination of impairments that significantly limits the claimant's ability to engage in basic work activities.  20 C.F.R. § 404.1520(c).

If the ALJ finds that the claimant is not working and suffers from a severe mental or physical impairment that also satisfies the duration requirement of 20 C.F.R. § 404.1509, she then proceeds to step three of the analysis.  Here the ALJ determines whether the medical evidence of the individual's impairment or combination of impairments satisfies the duration requirement and is equivalent to one or more of the impairments listed in Appendix 1, Subpart P.  20 C.F.R. § 404.1520(d).

If the claimant's impairment or its equivalent is not listed, the ALJ moves on to step four. Here, the ALJ determines whether the claimant has the necessary "residual functional capacity" to return to her former line of work.  20 C.F.R. § 404.1520(d).  Residual Functional Capacity ("RFC") is defined as "the most you can still do [in a work setting], despite your limitations," which may be physical and mental, and arise out of the claimant's impairment, and "any related symptoms, such as pain."  20 C.F.R. § 404.1545.   The claimant bears the burden of showing that she is unable to return to her past relevant work.  Adorno v. Shalala, 40 F.3d 43, 46 (3rd Cir. 1994).

Step four involves an analysis of three substeps: (1) the ALJ must make specific findings of fact as to the claimant's RFC; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the claimant's RFC to her past relevant work to determine whether claimant has the level of capability needed to perform that work.  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112 (3d Cir. 2000).

If the ALJ concludes that the claimant lacks the RFC to return to her former work, the

evaluation moves to its fifth and final step.  Here the burden shifts to the Commissioner, who must show that the claimant is able to perform other forms of work, thus negating a claim of disability.  20 C.F.R. § 404.1520(g).  The ALJ must show that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).

If the ALJ positively identifies the claimant's impairment (or equivalent) within the listed impairments of Appendix 1, Subpart P, or finds that the claimant is unable to engage in any kind of gainful employment, she will determine that the claimant is disabled.

## DISCUSSION

### A.  The Standard of Review

The findings of fact of the Commissioner of Social Security in determining eligibility for disability benefits shall be conclusive if supported by "substantial evidence."  42 U.S.C § 405(g).  Substantial evidence must be "more than a mere scintilla.  It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  If the evidence in the record supports more than one reasonable interpretation, deference is given to the Commissioner's findings.  Haseler v. Acting Comm'r of Soc. Sec., 33 Fed. Appx.631 (3d. Cir. 2002).

However, if the Commissioner's decision is not supported by substantial evidence, the District Court has the power to modify or reverse it.  42 U.S.C § 405(g).  Furthermore, courts

have mandated that leniency be shown in establishing a claimant's disability.  Although the burden is on the claimant to prove his disability, "a more tolerant standard" ought to be used in disability application hearings than would otherwise apply "where the adversary system prevails."  Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).

**B.  *The Review of the Administrative Decision***

The ALJ determined that, through the date of her December 22, 2004 decision, Plaintiff's medical evidence failed to show that her impairment was sufficiently severe to support her application for Disability Insurance Benefits.

Proceeding through the five-step analysis described above, the ALJ first noted that Plaintiff had not been gainfully employed since the onset of her alleged disability in December 2002.  Therefore, Plaintiff was not disqualified at step one, and the ALJ continued the analysis at step two.

At step two, the ALJ found that Plaintiff's hearing deficiency is mild to moderate and that her possible lupus or fybromyalgia, carpal tunnel syndrome, and asthma, formed a severe impairment within the meaning of the Regulations, but that Plaintiff's adjustment disorder was not severe in nature, resulting in only mild, or no, limitations on her functioning.  Noting that Plaintiff was to be considered eligible for DIB through the date of her decision, December 22, 2004, the ALJ determined that Plaintiff had satisfied the twelve-month duration requirement required at step two.  Plaintiff, therefore, was not disqualified at step two, and the ALJ continued the analysis at step three.

At step three, however, the ALJ's determination was that Plaintiff's medical conditions, either singly or in combination were not severe enough to meet or medically equal one of the

impairments listed in Appendix 1, Subpart P, Regulation No. 4.  See  20 C.F.R. § 404.  In evaluating the evidence presented by Plaintiff, the ALJ concluded that it does not "substantiate the allegations of the claimant to the degree alleged."

To support this finding, it is clear that the ALJ reviewed, considered, and evaluated a substantial amount of medical information concerning the nature and severity of Plaintiff's impairments and limitations, supplied by the Plaintiff, her attending and consulting physicians, and other medical sources.  The ALJ cited reports of Dr. Marcus who found that, despite a "low number of classic tender points,"  Plaintiff probably suffered from fibromyalgia.  The ALJ observed that a number of medical reports specified that medication improved Plaintiff's various medical conditions.  With the administration of medications, Plaintiff's body aches and fatigue improved, her tendonitis in the right rotator cuff improved to a full range of motion without pain, and allergies and skin rashes also improved.

The ALJ's determination reveals that the ALJ also considered the 2003 reports of Dr. Manzi who, in treating Plaintiff for asthma, body aches and allergies, noted that Plaintiff's asthma was controlled and that she was beginning also to control her weight problem.  Of particular concern to the ALJ, however, was Dr. Manzi's apparent bewilderment and confusion regarding Plaintiff's application for disability because Plaintiff "never expressed any plan for seeking disability and [Dr. Manzi] was at a loss for understanding [it]."

The ALJ also noted that Plaintiff, although she was a candidate for a hearing aid, she did not wear one to improve her mild to moderate life-long hearing loss.

The ALJ noted that, in addition to using medications, Plaintiff underwent surgery for bilateral median nerve entrapment to relieve pain and numbness in Plaintiff's wrist and hand.

10

Additionally, the ALJ reviewed the reported results of Plaintiff's MRI, which showed that Plaintiff also suffered from a small tear of the lateral meniscus and mild to moderate osteoarthritis.

The ALJ considered the evaluation of Dr. Cholhan, who treated Plaintiff for fatigue, arthralgis and headaches with various medications. Dr. Cholhan reported that Plaintiff's physical examination was normal and, although there was some wrist tenderness, there was no connective tissue disease.

The ALJ reviewed the findings of Dr. Hamada, who treated Plaintiff for bronchitis, sinusitis, allergies with medications.

In addition to the physical examination findings, the ALJ reviewed and considered both the psychiatric consultative examination by Dr. Moorehead and the psychiatric review of the record by state agency physician, Dr. Harding. The ALJ noted that Dr. Moorehead concluded that, although Plaintiff had a depressed mood, she was cooperative; she exhibited normal motor behavior and eye contact; she exhibited normal speech and thought processes; her attention and concentration were intact; she possessed average cognitive functioning with good insight and judgment; she presented no cognitive or intellectual deficits; and, she was able to perform complex tasks independently, make appropriate decisions, and relate adequately with others. The ALJ also noted that, based on review of the psychiatric record, Dr. Harding concluded that Plaintiff did not have a severe psychiatric disorder.

Lastly, the ALJ reviewed and considered the evaluation of Dr. Pirone who, after conducting a Physical Residual Functional Capacity Assessment based on Plaintiff's medical records, concluded that Plaintiff could perform light exertional work because she was able to lift

11

and carry twenty pounds occasionally, ten pounds frequently, and stand, walk and sit for six out of eight hours daily.  Therefore, it is clear to the Court that the ALJ appropriately reviewed, considered and evaluated the medical evidence submitted by and on behalf of Plaintiff in making her determination about Plaintiff's abilities.

It equally is clear to this Court that the ALJ gave appropriate consideration to the Plaintiff's subjective complaints that she is incapable of gainful employment.  While the ALJ acknowledged that Plaintiff suffers from a number of medical conditions, such as fibromyalgia, carpal tunnel syndrome, and asthma, she concluded that, although the medical evidence supports a determination that Plaintiff suffers from these conditions, the medical evidence does not support a determination that Plaintiff's symptoms are of such an intensity, duration, or frequency that she is precluded from gainful employment.  In short, the ALJ concluded that Plaintiff is not credible in her allegations regarding her limitations.

In the ALJ's assessment, Plaintiff's physical examinations essentially were normal and her psychiatric evaluations revealed no severe psychiatric disorder.  She noted that Plaintiff responded well to medications and her carpal tunnel syndrome was treated with surgery.  The AJL found no evidence that Plaintiff's life-long moderate hearing deficiency was getting worse.  And Plaintiff's asthma was controlled without visits to the emergency room.

Critical to the ALJ's assessment was her finding that the Plaintiff's own statements and actions did not support her allegation that she suffered from disabling impairments. The ALJ considered that Plaintiff's oral and written testimony was that her daily activities included the preparation of meals, the running of errands, shopping, cleaning, laundry, managing her mother's medical care and treatment, watching TV and reading.  According to the ALJ "it would appear

that [Plaintiff] is leading an active existence in spite of her allegations."

Having determined that Plaintiff's impairment did not rise to the level of an impairment listed in Appendix 1, Subpart P, the ALJ proceeded to step four of the analysis to determine if Plaintiff could perform any of her past relevant work[2] as a front office supervisor and medical assistant. Here, the ALJ defined Plaintiff's residual functional capacity as an ability to perform light work. Citing Plaintiff's own description of her previous job as a front office supervisor and medical assistant as being "sedentary and light in nature," the ALJ concluded that evidence establishes that Plaintiff is capable of performing her past relevant work and is not under a disability as defined in the Social Security Act, at any time through December 22, 2004. The ALJ, in summation, succinctly sets forth her findings in nine points.

## C. *Evaluation of the ALJ's Findings*

In the present case, the Court finds that determination of December 22, 2004 contains substantial evidence that the ALJ reviewed, considered, and evaluated each factor required. There is far more than a mere scintilla of evidence that the ALJ reviewed and considered the medical record compiled and the Plaintiff's subjective allegations of pain and disability.

Although the Plaintiff may be disappointed with, or even disagree with, the outcome, the Court finds that the ALJ's decision is well reasoned and replete with citations of medical evidence that a reasonable mind would accept as adequate to support the conclusion of the ALJ. Even allowing for a "more tolerant standard" and leniency in establishing Plaintiff's claim for

---

[2]The ALJ observed that to be considered "past relevant work" the work must have been performed within the last 15 years, or within 15 years of the disability, and must have lasted long enough for the claimant to have learned to do the job and meet the definition of substantial gainful activity.

13

disability, the evidence cited by the ALJ supports her denial of DIB.

Therefore, the Commission's decision not to grant DIB to Plaintiff Vanessa Peters is sustained.

### *CONCLUSION*

For the reasons stated above, this Court sustains the ALJ's decision that, based on the application filed January 29, 2003, Plaintiff Vanessa Peters is not entitled to a period of disability or DIB under Sections 216(I) and 223, respectively, of the Social Security Act.

An appropriate Order follows.

/S/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J..

Dated: December 19, 2006

14